IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 1:16-cv-03056-RM-GPG

BRAD LAMB,

    Plaintiff,

v.

MONTROSE COUNTY SHERIFF'S OFFICE,
RICK DUNLAP, in his individual and official capacities, and
JASON GRUNDY, in his individual and official capacities,

    Defendants.

---

## ORDER

---

This matter is before the Court on Defendants' motion for summary judgment (ECF No. 77). The motion has been fully briefed. (ECF Nos. 81, 86.) The Court has reviewed the pleadings, case file, and applicable law. For the reasons stated below, the Court grants the motion.

## I.    LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018). Applying this standard requires viewing the facts in the light most favorable to the nonmoving party and resolving all factual disputes and reasonable inferences in its favor. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013). Whether there is a genuine

dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation omitted). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248.

## II. BACKGROUND

Plaintiff worked as a deputy for the Montrose County Sheriff's Office ("MCSO") from September 2014 until September 2015, when he was fired. Upon hearing his coworkers use racial slurs and make racist remarks without being reprimanded by their supervisors, Plaintiff inferred that "a racist culture was accepted and condoned" at the MCSO. (ECF No. 1 at ¶ 30.) In November 2014, Plaintiff reported his concerns to Sergeant Taramarcaz, specifically mentioning remarks by Deputy Collins that Plaintiff found offensive. (*Id.* at ¶¶ 42, 43.) Plaintiff "was extremely disappointed to hear that Sergeant Taramarcaz was not as outraged with the racism in the Sheriff's Office as he was." (*Id.* at ¶ 48.) Months later, Sergeant Taramarcaz was suspended for a day for mishandling Plaintiff's complaints (ECF No. 86-1 at ¶ 45); Deputy Collins was suspended for three days for unbecoming conduct (*id.* at ¶ 46).

Before working for the MCSO, Plaintiff worked for the City of Delta Police Department. (ECF No. 1 at ¶ 23.) The police chief of that department was a friend of his. (*Id.* at ¶ 50.) In December 2014, Plaintiff sent a text message to the police chief in which he complained about the MCSO: "Just wanted to stay in touch. REALLY big mistake coming to work here. Racism, good Ole boy, no professionalism. Let me know if you and Angie are still up for poker." (*Id.*)

In February 2015, Plaintiff was investigated by the MCSO for sending the text message. The MCSO investigation concluded Plaintiff had violated MCSO rules by contacting another law enforcement agency and communicating defamatory opinions of the MCSO. (ECF No. 86-1 at ¶¶ 3, 9.) Plaintiff was disciplined with a one-day suspension for unbecoming conduct (*id.* at ¶ 10), and a letter about the investigation was placed in his personnel file (ECF No. 77-6 at 10). As part of the investigation, Plaintiff submitted a written statement in which he reiterated his concerns about racism at the MCSO, again citing specific remarks by Deputy Collins that offended him. (*Id.* at 5-7.) He also reported other misconduct, including sexual harassment and removal of ammunition from another deputy's weapon. Additional investigations ensued, prompting the discipline mentioned above against Sergeant Taramarcaz and Deputy Collins.

In June 2015, Plaintiff was written up by Defendant Grundy for his conduct while the MCSO was responding to a call about a suicidal subject. (*Id.* at ¶ 11.) An investigation into that incident concluded Plaintiff had demonstrated unsatisfactory performance by clearing from a call and then involving himself back into the call without notifying dispatch or other crew members, by disregarding radio traffic several times, and by placing crew members and the suicidal subject at risk. (*Id.* at ¶ 12.) Plaintiff argues that because the incident ended successfully with Plaintiff getting the subject to the hospital, his failure to follow proper procedures was not the real reason

for the write-up. (ECF No. 81 at 17.) The write-up also stated that Plaintiff had not formatted his report about the incident according to Deputy Grundy's instructions. (*Id.* at ¶ 13.) Plaintiff alleges that Defendant Grundy never instructed him on how to format the report and that the write-up was retaliation for Plaintiff's complaints about Deputy Collins, who was a close friend of Defendant Grundy's. (ECF No. 1 at ¶ 81-82.) Nonetheless, the investigation concluded Plaintiff had demonstrated, and even admitted to, insubordination.

In September 2015, Plaintiff was again written up by Defendant Grundy—this time for disobeying an order for Plaintiff to present an affidavit he was preparing to Defendant Grundy for his review before submitting it to the court. (*Id.* at ¶ 84.) Plaintiff alleges that Defendant Grundy never asked him to do this. (*Id.* at ¶ 85.) An investigation into that incident found that when Defendant Grundy did finally review the report, he found mistakes, including the location of the offense and the suspect's address, and he directed Plaintiff to amend the affidavit. (ECF No. 77-9 at 1.) The investigation also identified other errors Plaintiff had made, including failing to complete two reports before leaving his shift, misidentifying a subject who should have been arrested rather than issued a summons, and using an incorrect case number. (ECF No. 86-1 at ¶ 21.) The investigation concluded Plaintiff demonstrated unsatisfactory performance and insubordination. (*Id.* at ¶ 22.)

Later that month, Defendant Dunlap terminated Plaintiff's employment with the MCSO. (*Id.* at ¶¶ 25, 26.) The disciplinary report supporting the notice of termination stated there were many issues regarding Plaintiff's unsatisfactory performance and his failure to conform to the standards of the MCSO. (ECF No. 77-10 at 1.) The report cited Plaintiff's three documented allegations of misconduct in less than a year of employment and concluded that due to his

multiple sustained allegations, Plaintiff could no longer be an effective, trustworthy employee. (*Id.* at 1, 4.)

After filing a charge of discrimination with the Equal Employment Opportunity Commission and the Colorado Civil Rights Division, Plaintiff obtained a right-to-sue letter. (ECF No. 1 at ¶¶ 13-14.) He then filed this action in December 2015. The complaint asserts three claims for relief: (1) retaliation for engaging in protected activities in violation of Title VII of the Civil Rights Act against the MCSO; (2) retaliation for engaging in protected activity in violation of the Colorado Anti-Discrimination Act ("CADA") against the MCSO; and (3) retaliation in violation of 42 U.S.C. § 1983 against Defendants Grundy and Dunlap, individually and in their official capacities.[1] The complaint identifies three alleged acts of protected conduct that prompted retaliation by the MCSO and its employees: Plaintiff's November 2014 complaint to Sergeant Taramarcaz about racism at the MCSO, Plaintiff's December 2014 text message to the police chief, and Plaintiff's February 2015 written statement about misconduct at the MCSO that he submitted in connection with the investigation into the text message. (ECF No. 1 at ¶ 101.) In Claims One and Two, Plaintiff alleges that the MCSO retaliated against him by suspending him for one day in February 2015 and by firing him in September 2015. (ECF No. 81 at 19.) In Claim Three, Plaintiff alleges that Defendant Grundy retaliated against him by writing him up in June 2015 and that Defendant Dunlap retaliated against him by firing him. (*Id.* at 3.)

---

[1] This claim was also brought against other employees of the MCSO, but the Court dismissed the claims against them in an Order dated March 6, 2018. (ECF No. 65.) The Order also narrowed the scope of the claims against Defendants Grundy and Dunlap. (*Id.*)

## III. ANALYSIS

### A. Claims One and Two

The same legal standards apply to Title VII and CADA claims, so they "rise or fall together." *Johnson v. Weld Cty.*, 594 F.3d 1202, 1219 n.11 (10th Cir. 2010) (quotation omitted). To evaluate these claims, courts apply the three-part test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1211 (10th Cir. 2008). First, to establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in protected opposition to discrimination, (2) a reasonable employee would have found the challenged action materially adverse, and (3) a causal connection exists between the protected activity and the materially adverse action. *Id.* at 1212. Second, if the plaintiff makes this prima facie showing, the burden shifts to the employer to provide a legitimate nonretaliatory reason for the adverse action. *Id.* at 1211. Third, if the employer makes this showing, the burden shifts back to the plaintiff to show that the proffered reason is pretextual. *Id.*

In his response to the motion for summary judgment, Plaintiff states that two acts of retaliation form the basis for these claims: his one-day suspension in February 2015 and his termination in September 2015. (ECF No. 81 at 19.)

#### 1. Suspension

Plaintiff argues that his one-day suspension in February 2015 was retaliatory. To establish the first element of his prima facie case, he relies exclusively on his December 2014 text message, arguing that "[b]ecause his original text complained of racism and was passed to management, it was a protected activity." (ECF No. 81 at 18.) The Court concludes the text message does not support his Title VII and CADA claims.

6

An employee engages in activity protected by Title VII when "he has opposed any practice made an unlawful employment practice by [Title VII], or . . . made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). Although Plaintiff's text message could be construed as expressing disapproval of racism in a general sense, free-floating "racism," untethered to specific conduct or a specific policy, is not an unlawful employment practice. *See Wimmer v. Suffolk Cty. Police Dep't*, 176 F.3d 125, 135 (2d Cir. 1999) ("[Plaintiff's] claim of retaliation is not cognizable under Title VII because his opposition was not directed at an unlawful *employment practice* of his employer."). Without more, the text message on its face does not amount to "protected opposition to discrimination" under Title VII. Plaintiff's attempt to shoehorn the text message into a retaliation claim is further impeded by the fact that he sent it to a friend (albeit a police chief of another department) rather than anyone at the MCSO who might be in a position to address the alleged racism. Under the circumstances, Plaintiff's text message—standing alone—cannot reasonably be construed as opposing an employment practice at the MCSO made unlawful under Title VII.[2] Therefore, Plaintiff fails to state a prima facie case of retaliation based on his suspension.

2. Termination

Plaintiff also contends his termination was retaliation for his protected opposition to discrimination. For the purpose of analyzing this portion of Plaintiff's claims, the Court assumes Plaintiff's November 2013 report to Sergeant Taramarcaz and his February 2015 written

---

[2] This is not to say that allegations of racism within the workplace would not, under appropriate circumstances, support a claim of hostile work environment or retaliation for reporting the same to appropriate supervisors or agencies. But that is not the contention here.

comments about misconduct at the MCSO satisfy the first two elements of a prima facie case of retaliation. Nonetheless, Plaintiff has not shown evidence of a causal connection between his alleged protected activity and his termination. Nor does he identify evidence that Defendants' proffered reasons for his termination are pretextual.

"A causal connection is established where the plaintiff presents evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1221 (10th Cir. 2002) (quotation omitted). Under Tenth Circuit precedent, temporal proximity alone is insufficient to establish causation if the retaliatory action occurs more than three months after protected activity. *Lauck v. Campbell Cty.*, 627 F.3d 805, 815 (10th Cir. 2010). Here, Plaintiff was terminated in September 2015, seven months after his latest alleged protected activity in February 2015. Plaintiff has not adduced any additional evidence of causation. Plaintiff does not allege that anyone criticized him—directly or indirectly—for his protected conduct, much less someone with authority to affect his employment. The notice of termination does not mention his official complaints. Mere speculation that his complaints to the MCSO contributed to his termination cannot establish the third element of a prima facie case.

The Court further finds Plaintiff has not shown there is a genuine issue that the reasons given for his termination are pretextual. As described more fully below, the MCSO had significant concerns about Plaintiff's job performance, including one incident that put other deputies' safety at risk and multiple acts of insubordination within months of his hiring. Based on the conclusions of the MCSO's multiple investigations into Plaintiff's conduct, no reasonable

jury could find that the MCSO's stated reasons for terminating Plaintiff are pretextual. Therefore, the MCSO is entitled to summary judgment on these claims.

**B.     Claim Three**

The Court analyzes Plaintiff's First Amendment retaliation claims using the five-step approach based on *Garcetti v. Ceballos*, 547 U.S. 410 (2006), and *Pickering v. Board of Education*, 391 U.S. 563 (1968). *See Lauck*, 627 F.3d at 814. First, the Court must determine whether Plaintiff's speech was pursuant to his official duties. *See Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1202 (10th Cir. 2007). If so, "there is no constitutional protection because the restriction on speech simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Id.* (quotation omitted). Second, if not, the Court must determine whether Plaintiff's speech involved a matter of public concern. *Id.* Third, if so, the Court must determine whether the employee's interest in commenting on the issue outweighs the interest of the state as employer. *Id.* at 1203. These three steps are typically, though not always, questions of law, which the Court resolves. *See Seifert v. Unified Gov't of Wyandotte Cty.*, 779 F.3d 1141, 1151 (10th Cir. 2015).

Fourth, if the first three steps are satisfied, the Court must determine whether the employee has shown that his speech was a substantial or motivating factor in a detrimental employment decision. *Lauck*, 627 F.3d at 814. Fifth, if so, the Court must determine whether the employer has demonstrated that it would have taken the same action against the employee even in the absence of the protected speech. *Id.* Though these last steps are typically questions of fact, they may be resolved on a motion for summary judgment when appropriate. *See, e.g., Lobato v. N.M. Env't Dep't*, 733 F.3d 1283, 1297 (10th Cir. 2013) (affirming summary judgment

9

at step four because plaintiff's evidence and arguments were insufficient to raise a genuine issue that his employer had a nonretaliatory reason for firing him); *Meyers v. E. Okla. Cty. Tech. Ctr.*, 776 F.3d 1201, 1206 (10th Cir. 2015) (affirming summary judgment at step five because any reasonable jury would have found plaintiff would have been fired even without a retaliatory motive).

Defendants Grundy and Dunlap contend they are entitled to qualified immunity on the claims against them in their individual capacities.[3] Qualified immunity shields individual defendants named in § 1983 actions unless their conduct was unreasonable in light of clearly established law. *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014). "[W]hen a defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Id.* (quotation omitted).

Both parties focus exclusively on Plaintiff's text message as the underlying speech or protected activity that animates this claim. To the extent Plaintiff has not abandoned or waived any argument that his November 2014 and February 2015 statements contributed to his discipline and termination, the Court concludes that these instances would not survive the first step of the *Garcetti-Pickering* analysis. "[S]peech relating to tasks within an employee's uncontested employment responsibilities is not protected from regulation." *Brammer-Hoelter*, 492 F.3d at 1203. In these two instances, the parties seem to agree Plaintiff was speaking as a government employee and performing his official duty to report racism and misconduct at the

---

[3] Defendants Grundy and Dunlap cannot assert qualified immunity as a defense to the claims against them in their official capacities, which are essentially claims against the MCSO. *See Brandon v. Holt*, 469 U.S. 464, 471-72 (1985) ("[A] judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents provided, of course, the public entity received notice and an opportunity to respond.").

MCSO.  (*See* ECF No. 86-1 at ¶ 63.)  Therefore, like the analysis of the parties, the following analysis pertains to Plaintiff's First Amendment retaliation claim based on the text message only. The Court will assume that the text message was not sent pursuant to Plaintiff's official duties, that it involves a matter of public concern, and that Plaintiff's interest in sending the text message outweighs the governmental interest in regulating speech to maintain an effective working environment.

     1.  <u>Defendant Grundy</u>

  In June 2015, Defendant Grundy wrote up Plaintiff for his improper conduct while the MCSO was responding to a call involving a suicidal subject and for his subsequent failure to format his written report according to Defendant Grundy's instructions.  Plaintiff contends that the real reason he was written up was because of the text message, for which he had been disciplined four months earlier.  However, Plaintiff fails to identify any evidence that his text message was a substantial factor in Defendant Grundy's decision to write him up.[4]  Nor has he shown there is a genuine issue that Defendant Grundy would have written him up regardless of any motive to retaliate against him for sending the text message.

  First, Plaintiff identifies no evidence that Defendant Grundy was aware of the text message.  Plaintiff speculates that since Deputy Collins "heard rumors about the text message," Defendant Grundy also heard about it, either from Deputy Collins or "from other sources within the small department."  (ECF No. 81 at 14.)  Plaintiff also speculates that once Defendant Grundy heard about the text message, he was sufficiently bothered by it that he wanted to

---

[4] For present purposes, the Court assumes the write-up constituted an adverse employment action.  The only disciplinary action it recommended was additional training on the MCSO's operating procedures.  (ECF No. 77-8 at 2.)

retaliate against Plaintiff. Plaintiff further speculates that Defendant Grundy then followed through with his desire to retaliate against Plaintiff by writing him up for wholly unrelated conduct. This chain of speculation does not establish a genuine issue as to whether the text message was a substantial factor in the decision to write up Plaintiff.

Moreover, Plaintiff has not identified any evidence to rebut Defendants' showing that Defendant Grundy would have written him up regardless of any intention to retaliate for the text message. The write-up contains a serious allegation that Plaintiff placed himself and others at risk by contacting a suicidal subject who did not want law enforcement contact because he feared going to jail. (ECF No. 77-8 at 2.) Plaintiff attempts to brush this aside by arguing that the incident ended successfully, but he has not provided any evidence contradicting Defendant Grundy's account of the incident. The write-up also includes less serious allegations related to the formatting of Plaintiff's report, but these allegations matter because they fit a pattern of Plaintiff's insubordination at the MCSO. Thus, the allegations provide a logical basis for Defendant Grundy to have written up Plaintiff. *See Trant v. Oklahoma*, 754 F.3d 1158, 1168 (10th Cir. 2014) (concluding the reasons offered by the employer were sufficient to show that any retaliatory motive was not the but-for cause of the plaintiff's termination). No evidence or logic supports Plaintiffs bare assertion that he would not have been written up unless Defendant Grundy wanted to retaliate against him for sending the text message. Accordingly, Defendant Grundy is entitled to summary judgment on this claim.

In his response brief, Plaintiff makes no argument regarding his claim against Defendant Grundy in his official capacity. The Court considers this claim waived. *See Tran v. Trs. of State Colls. in Colo.*, 355 F.3d 1263, 1266 (10th Cir. 2004).

### 2. Defendant Dunlap

In deciding to terminate Plaintiff's employment, Defendant Dunlap relied on a disciplinary report that listed three documented allegations of misconduct in less than a year, including his suspension for sending the text message. Plaintiff contends there is a question of fact as to whether he would have been terminated regardless of the text message. The Court is not persuaded.

Summary judgment is appropriate on the fifth step of the *Garcetti-Pickering* analysis when any reasonable jury would find that the plaintiff would have been terminated even absent any desire to retaliate for his alleged protected conduct. *Trant*, 754 F.3d at 1167. Even if Plaintiff was terminated at least partially because of the text message, that does not mean that he would not have been terminated in any event. "[A] rule of causation which focuses solely on whether protected conduct played a part in an adverse employment decision could place an employee in a better position as a result of the exercise of constitutionally protected conduct than he would have occupied had he done nothing." *Id.* Plaintiff acknowledges that each of the MCSO's investigations concluded his conduct did not meet the MCSO's standards. Although he now argues those conclusions were incorrect, he did not appeal them. Further, it is Defendant Dunlap's perception of Plaintiff's performance that is relevant here, not Plaintiff's subjective evaluation of his own performance. *See Tran*, 355 F.3d at 1270. Plaintiff has identified no evidence that the other reasons for his termination "are so weak, implausible, inconsistent, incoherent, or contradictory as to support a reasonable inference" that Defendant Dunlap would not have terminated him had he not sent the text message. In other words, these incidents, taken together, reasonably account for Plaintiff's termination without need to rely on retaliatory

animus associated with the text message. Because Plaintiff's disciplinary record provided a sufficient reason to terminate his employment, Plaintiff's contention that Defendant Dunlap would have reached a different decision in the absence of the text message is unavailing.

With respect to Plaintiff's claim against Defendant Dunlap in his official capacity, the Court accepts Plaintiff's assertion that Defendant Dunlap was an official policymaker of the MCSO. However, because Plaintiff has not shown that his termination was improper, there is no basis for imposing municipal liability.

### 3. Qualified Immunity

Because Plaintiff has not established a violation of his rights, Defendants Grundy and Dunlap are also entitled to qualified immunity on the claims against them in their individual capacities.

## IV. CONCLUSION

The motion for summary judgment (ECF No. 77) is GRANTED. The Clerk is directed to CLOSE the case.

DATED this 3rd day of July, 2019.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge